1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

OPERATING ENGINEERS' HEALTH
8
AND WELFARE TRUST FUND FOR
9
NORTHERN CALIFORNIA, et al.,

10                    Plaintiffs,

11          v.

12
13

MARK J. HANSEN,

14                    Defendant.

Case No.  19-cv-08344-JSC


**ORDER GRANTING MOTION FOR
DEFAULT JUDGMENT**

Re: Dkt. No. 74

15
16          Plaintiffs make a claim under the Employee Retirement Income Security Act ("ERISA")

17   alleging Defendant failed to timely pay all amounts owed for contributions for hours worked by

18   Defendant's employees.  (Dkt. No 1 ¶ 16.)[1]  Plaintiffs seek to recover all unpaid contributions,

19   liquidated damages, and interest on delinquent contributions pursuant the Collective Bargaining

20   Agreements (comprised of the "Independent Agreement" and the "Master Agreements") and the

21   "Trust Agreements" between the parties.  (*Id.* ¶¶ 17, 14; Dkt. No. 74 at 9.)  Defendant failed to

22   respond to Plaintiffs' lawsuit.  Plaintiffs' motion for default judgment is now pending before the

23   Court.  (Dkt. No. 74.)  The Court GRANTS the motion for default judgment and AWARDS

24   Plaintiffs $28,426.72 in damages, $39,800.70 in attorneys' fees, and $4,478.63 in costs for a total

25   of $72,706.05.

26
27
28

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

# BACKGROUND

## A.  Complaint Allegations

Plaintiffs are employee benefit plans and their respective trustees.  (Dkt. No. 1 ¶ 1.)
Defendant is Mark J. Hansen, an employer doing business as "M&M Hansen Communications
Contracting."  (*Id*.)   The parties entered into the Master Agreement requiring Defendant to make
contributions to Plaintiff Trust Funds—funds organized under and pursuant to the provisions of 29
U.S.C. § 186(c)—based on the hours worked by Defendant's employees.  (Dkt. Nos. 74-1 ¶ 5; 74-
2 at 262-270, §§ 12.00.00-12.14.00.)  The Trust Agreements establish the various Trust Funds,
require Defendant to pay benefit contributions to Plaintiffs, and enumerate the procedures if
Defendant fails to do so.  (Dkt. Nos. 74-1 ¶ 8; 74-2 at 288, § 12.01.03.)[2]  The Master Agreement
incorporates the terms of the Trust Agreements, and the terms of the Master Agreement provides
the agreement's effects continue indefinitely after the stated termination date if no written notice is
submitted by the signatories.  (Dkt. No. 74-2 at § 25.03.00.)  Defendant has not submitted any
such notice.  (Dkt. No. 74-1 ¶ 6.)  The current Master Agreement's terms and conditions are
incorporated into the Independent Agreement signed by Defendant.  (Dkt. No. 74-2 at 1.)

Defendant paid contributions late and failed to pay several principal contributions in full
which caused liquidated damages and interest to accrue.  (Dkt. No. 74-1 ¶¶ 16-18.)  Before
Plaintiffs filed their instant lawsuit in 2019, the Trust Funds requested an audit of payroll records
as stipulated in the Master Agreement.  (Dkt. No. 1 ¶¶ 21-22.)  Defendant complied in 2022.  (Dkt.
Nos. 74-2 at 269, § 12.13.07; 74 at 10-13.)  Plaintiffs seek to recover unpaid contributions,
liquidated damages, and interest pursuant to the terms of the Collective Bargaining Agreements
and Trust Agreements for a total of $94,072.93.  (Dkt. No. 74 at 8.)

## B.  Procedural Background

Plaintiffs filed a Complaint to compel Defendant to comply with an audit of his payroll
records and to pay all contributions, liquidated damages, and interest including such costs which
accrued for any months Defendant failed to report to Plaintiffs through the time of Judgment.

---

[2] Sections 12.13.00-12.13.08 of the 2023-2026 Master Agreement detail procedures and due costs
for delinquency.  (Dkt. No. 74-2 at 268-60.)

(Dkt. No. 1.)  Proof of Service of Summons was filed with this Court.  (Dkt. No. 18.)  Defendant has not made an appearance in this matter and has not responded.  Plaintiffs filed for Entry of Default and the Clerk entered default as to Defendant, which Plaintiffs served notice of to Defendant.  (Dkt. Nos. 19, 22.)  No response from Defendant has followed, and Plaintiffs filed a motion for default judgment against Defendant.  (Dkt. Nos. 74-3, ¶ 15; 74.)  Defendant did not respond to the motion for default judgment.

## LEGAL STANDARD

After entry of default, a court may exercise discretion to grant default judgment on the merits of the case.  Fed. R. Civ. P. 55(b)(2).  The complaint's factual allegations regarding liability are deemed admitted by the non-moving party and are accepted as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Courts in the Ninth Circuit apply the *Eitel* factors, detailed below, to determine if default judgment is appropriate.  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## DISCUSSION

### A.  Sufficiency of Service of Process

A court must assess whether the party against whom default judgment is sought was properly served with notice of the action.  *Penpower Tech. Ltd. V. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008).  Rule 4(e) provides an individual may be served by personally delivering the summons and complaint.  Fed. R. Civ. P. 4(e)(2)(A).  Here, service was sufficient because Plaintiffs properly served the Complaint and related pleadings by personal service on Defendant and filed a Proof of Service of Summons.  (Dkt. No. 18.)

Moreover, Defendant has notice of the lawsuit.  Plaintiffs filed this action on December 20, 2019 to compel Defendant to comply with an audit of his payroll records for October 1, 2017 through June 30, 2018 and to compel Defendant to pay contributions, interest, and liquidated damages.  (Dkt. No. 74-3 ¶ 9.)  Plaintiffs sent a letter to Defendant on "August 5, 2020," indicating Plaintiffs "were making one final demand for compliance with the request for an audit of his payroll records for the period from October 1, 2017 through June 30, 2018, or else Plaintiffs would request the Court enter Judgment against him."  (*Id.* ¶ 12.)  "On or about August 13, 2020,

1    Defendant scheduled the requested audit of its payroll records, and the audit was conducted on

2    September 23, 2020," though Defendant still failed to appear in this case.  (*Id.* ¶ 13.)  Plaintiffs

3    issued another demand letter on March 10, 2022.  (*Id.* ¶ 14.)  Defendant responded "there was an

4    illness and death in the family" and Defendant "stated he experienced a back injury and was taking

5    medication for pain relief and was delayed in gathering the remaining documents."  (*Id.*)

6    Defendant later "submitted payment for the revised audit findings but failed to submit payment for

7    all other outstanding amounts, including liquidated damages and interest from late-paid

8    contributions."  (*Id.*)  Given Defendant's contact with Plaintiffs' counsel, it is clear Defendant is

9    aware of the pending lawsuit against him.

10       **B.   Jurisdiction**

11            Courts must examine both subject matter and personal jurisdiction when default judgment

12   is sought against a non-appearing party.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

13                **1.   Subject Matter Jurisdiction**

14            This Court has subject matter jurisdiction because, under federal law, plan fiduciaries may

15   bring civil actions to enforce the terms of the plan.  29 U.S.C. § 1132(a)(3)(B)(ii).  Moreover,

16   Plaintiffs seek to enforce the terms and conditions of the Collective Bargaining Agreements

17   which, as a suit for "violation of contracts between an employer and a labor organization

18   representing employees," may be brought in any district court having jurisdiction of the parties,

19   without respect to the amount in controversy or the parties' citizenship.  29 U.S.C. § 185(a).

20                **2.   Personal Jurisdiction**

21            A court may acquire personal jurisdiction over a defendant in two ways: "by personal

22   service of that defendant or by means of a defendant's minimum contacts with the jurisdiction."

23   *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir. 1992) (cleaned up).

24   However, due to the nationwide service of process provision, service on a defendant in an ERISA

25   case anywhere in the United States is sufficient to establish personal jurisdiction, and there is no

26   need to engage in the "minimum contacts" analysis.  *Id; see also Cole v. Central States Southeast*

27   *and Southwest Areas Health and Welfare Fund*, 225 F.Supp.2d 96, 102 (D. Mass. 2002)

28   (following *Cripps*)*;* 29 U.S.C. § 1132(e)(2) ("[P]rocess may be served in any [] district where a

1    defendant resides or may be found.").  Therefore, this Court has personal jurisdiction over the

2    parties pursuant to ERISA's service of process provision.

3         Moreover, the Court likely has jurisdiction over Defendant even without the ERISA

4    provision because the Independent Agreement indicates Defendant's place of business is in

5    Northern California and the Master Agreement is noted as "For Northern California."  (Dkt. No.

6    74-2 at 1-2.)

7    **C.  *Eitel* Factors**

8         In exercising discretion to grant default judgment, courts consider the factors laid out in

9    *Eitel*:

10        > (1) the possibility of prejudice to the plaintiff, (2) the merits of
          > plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
11        > the sum of money at stake in the action[,] (5) the possibility of a
          > dispute concerning material facts[,] (6) whether the default was due
12        > to excusable neglect, and (7) the strong policy underlying the Federal
          > Rules of Civil Procedure favoring decisions on the merits.

13   782 F.2d at 1471–72.

14        **1.  Prejudice to the Plaintiffs**

15        The first factor considers whether Plaintiffs will suffer prejudice if the Court declines to

16   enter default judgment, that is, whether Plaintiffs will be left without a legal remedy.  *GS Holistic,*

17   *LLC v. MSA-Bossy Inc.*, No. 22-07638, 2023 WL 3604322 at *3 (N.D. Cal. May 22, 2023).  Here,

18   because Defendant did not respond to the Complaint, Plaintiffs' only recourse for their claims is

19   default judgment.  *See Fudy Printing Co., Ltd. V. Aliphcom, Inc.*, No. 17-03863, 2019 WL

20   2180221, at *3 (N.D. Cal. March 7, 2019) ("Plaintiff's only recourse is default judgment because

21   [the defendant] has failed to respond to the complaint.").

22        So, this factor weighs in favor of default judgment.

23        **2.  Merits of Plaintiffs' Substantive Claims/Sufficiency of the Complaint**

24        The second and third factors, "often analyzed together," consider whether the facts as

25   pleaded in the complaint address the merits and sufficiency of Plaintiffs' claims.  *Dr. JKL Ltd. v.*

26   *HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010).  In analyzing these *Eitel* factors,

27   all well-pleaded allegations regarding liability are accepted as true and deemed admitted.  *Fair*

28

United States District Court
Northern District of California

1    *Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  Consequently, "[t]he district court

2    is not required to make detailed findings of fact."  *Id*. at 906.

3        As defined under ERISA, Defendant is an employer, and Plaintiffs are multi-employer

4    plans. 29 U.S.C. § 1002(37)(A); (Dkt. No. 1 ¶ 1.)  Plaintiffs have demonstrated Defendant entered

5    into the Independent Agreement with Plaintiffs.  (Dkt No. 74-2 at 1.)  The Independent Agreement

6    incorporates the terms and conditions of the current Master Agreement requiring Defendant to

7    contribute to Plaintiff Trust Funds.  (*Id.*); *see* 29 U.S.C § 1145 (requiring "every employer who is

8    obligated to make contributions to a multiemployer plan" to "make such contributions in

9    accordance with the terms and conditions of such plan or such agreement").  Plaintiffs allege, and

10   the Court must accept as true, Defendant has failed and refused to pay outstanding amounts due

11   including contributions, liquidated damages, and interest.  (Dkt. No. 74-1 ¶¶ 16-20); *Geddes v.*

12   *United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon

13   default the factual allegations of the complaint, except those relating to the amount of damages,

14   will be taken as true.").  Therefore, Plaintiffs have successfully stated a claim for relief under

15   ERISA.  *See U.A. Local No. 467 Pension Trust Fund v. Hydra Ventures Inc.*, No. 12-3746, 2013

16   WL 1007311, at *7 (N.D. Cal. March 13, 2013) (finding this *Eitel* factor satisfied because the

17   plaintiffs showed the defendant failed to pay obligated contributions detailed in the bargaining and

18   trust agreements).

19       So, these factors weigh in favor of granting default judgment.

20           **3.  Sum of Money**

21       The fourth factor considers the reasonableness of the sum of money at stake.  *See, e.g.*,

22   *J&J Sports Prod., Inc. v. Rafael*, No. 10-1046, 2011 WL 445803, at *2 (E.D. Cal. Feb. 8, 2011)

23   (explaining courts can consider the sum of money when deciding a default judgment).  "Default

24   judgment is disfavored when a large amount of money is involved or unreasonable in light of the

25   potential loss caused by the defendant's actions."  *HICA Educ. Loan Corp. v. Warne*, No. 11-

26   04287, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012).  The Court analyzes this factor "in

27   relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc. v. California Sec. Cans*, 238 F.

28   Supp. 2d 1172, 1176 (C.D. Cal. 2002).  Put differently, when the sum "is tailored to the specific

United States District Court
Northern District of California

6

1  misconduct of the defendant, default judgment may be appropriate." *Board of Trustees. v. Core*

2  *Concrete Constr., Inc.*, No. 11–02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012).

3      Plaintiffs seek a total of $94,072.93 in attorneys' fees and damages based on Defendant's

4  unpaid and late-paid contributions, liquidated damages, and interest as set forth in the Collective

5  Bargaining Agreements.  (Dkt. No. 74 at 8, 19, 26.)  The sum is reasonable because it is based on

6  the contractual terms of the Collective Bargaining Agreements and the Trust Agreements which

7  hold Defendant liable for unpaid and late-paid contributions as well as liquidated damages and

8  interest accrued from unpaid and late-paid contributions.  (Dkt. Nos. 74 at 19; 74-3 §§ 12.00.00-

9  12.14.02.); *see Operating Engineers Health and Welfare Trust Fund for Northern California, et*

10  *al. v. Pipe-net, Inc., et al.*, No. 23-06267, 2024 WL 3390528, at *4 (N.D. Cal. June 14, 2024)

11  (finding default judgment appropriate because the amount claimed was based on the specific

12  misconduct of failing to pay contributions).  Moreover, the sum itself is not so substantial and

13  does not even exceed the "modest" sum found suitable for default judgment in *Tragni v.*

14  *Manzanares*.  No. 11-01173, 2011 WL 3740739, at *2 (N.D. Cal. Aug. 23, 2011) (an ERISA case

15  deeming a total judgment of $94,858.81 a modest sum compared to the $2,900,000 requested in

16  *Eitel*).

17      So, this factor weighs in favor of default judgment.

18          **4.   Dispute Regarding Material Fact**

19      The fifth factor requires the Court to consider whether a dispute is possible concerning

20  material facts.  *Eitel*, 782 F.2d at 1471-72.  Defendant was properly served with the Complaint and

21  Summons in this action but has not requested the entry to default be set aside or otherwise appear

22  in the action.  (Dkt. No. 74-3 ¶¶ 10, 11, 16.)  Therefore, this factor weighs in favor of default

23  judgment because Defendant is or reasonably should be aware of the lawsuit and yet has not

24  "challenge[d] the accuracy of the allegations in the complaint."  *Landstar Ranger, Inc. v. Parth*

25  *Enterprises, Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).

26          **5.   Excusable Neglect**

27      The sixth factor "favors default judgment where the defendant has been properly served or

28  the plaintiff demonstrates that the defendant is aware of the lawsuit."  *Wecosign, Inc. v. IFG*

United States District Court
Northern District of California

7

1   *Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).  Here, Defendant was properly

2   served and is clearly aware of the suit because he responded to Plaintiffs' audit requests.  (Dkt.

3   No. 74-3 ¶¶ 16, 13-14.)  Despite communications to Defendant about the audit requests in

4   February 2019, Defendant failed to comply until August 2020 when Defendant cited numerous

5   health and financial issues to explain his late compliance with the audit requests.  (Dkt. No. 74-3 ¶

6   14.)  However, Defendant did not cite such issues in a response to the action against him nor did

7   he file a response at all.  Defendant's demonstrated ability to respond and comply with the audit

8   requests suggests there is no excusable neglect in his failure to respond.  Therefore, the sixth factor

9   weighs in favor of default judgment because it is unlikely Defendant's failure to respond is due to

10  excusable neglect.

### 6.  Policy Favoring a Decision on the Merits

12          The final *Eitel* factor considers the policy favoring a decision on the merits.  Because

13  public policy favors a decision on the merits, default judgment is inherently undesirable.  *Eitel.*,

14  782 F.2d at 1472.  However, a decision on the merits is impossible in this case because Defendant

15  has failed to participate in the proceedings.  *See PepsiCo, Inc. v. California Security Cans*, 238 F.

16  Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("[A] [d]efendant's failure to answer the [p]laintiffs'

17  complaint makes a decision on the merits impractical, if not impossible.").

18          So, this factor is neutral.

### 7.  Liability Following *Eitel* Analysis

20          Considering all the *Eitel* factors, the factors weigh in favor of default judgment.  Plaintiffs

21  will be prejudiced if default judgment is not granted.  Plaintiffs plead viable claims, the sum of

22  money in question is reasonable based on the circumstances, there is no apparent dispute of

23  material fact regarding liability, and Defendant's failure to respond does not appear to be the result

24  of excusable neglect.  So, the Court grants Plaintiffs' motion for default judgment.

### D.  Damages

26          On a motion for default judgment, the Court does not accept factual allegations regarding

27  damages as true.  *TeleVideo Sys., Inc.*, 826 F.2d at 917-18 (citing *Geddes*, 559 F.2d at 560).

28  Instead, claimants are required to prove all damages sought in the complaint (and, generally, no

United States District Court
Northern District of California

more than sought in the complaint).  *See* Fed. R. Civ. P. 54(c).  "The district court may determine the amount of damages without an evidentiary hearing where 'the amount claimed is a liquidated sum or capable of mathematical calculation.'"  *Lasheen v. Embassy of The Arab Republic of Egypt*, 625 F. App'x 338, 341 (9th Cir. 2015) (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)).  Plaintiffs seek the following damages, including attorneys' fees and costs:

| Work Month | Contribution Balances | 20% Liquidated Damages | 10% Interest | Total |
|---|---|---|---|---|
| 07/20 | $332.09 | $2,365.92[1] | $0.00[2] | **$2,698.01** |
| 04/24 | $4,988.93 | $997.79 | $15.05 | **$6,001.77** |
| **Subtotal (Outstanding Contributions + LDs and Interest Thereon):** | | | | **$8,699.78** |
| 20% Liquidated Damages on Late-Paid Contributions After Filing of Complaint (1/20, 2/20, 4/20-6/20, 8/20-12/20, 1/21-6/21, 8/21, 9/21, 2/22-8/22, 11/22, 12/22, 1/23, 2/23/ 4/23, 7/23-9/23, 11/23, 2/24, 3/24): | | | | **$39,370.04** |
| 10% Interest on Late-Paid Contributions After Filing of Complaint (1/20, 2/20, 4/20-6/20, 8/20-12/20, 1/21-6/21, 8/21, 9/21, 2/22-8/22, 11/22, 12/22, 1/23, 2/23/ 4/23, 7/23-9/23, 11/23, 2/24, 3/24, 4/24): | | | | **$327.56** |
| **Subtotal (LDS and Interest on Late-Paid *After* Filing of Complaint):** | | | | **$39,697.60** |
| 10% Liquidated Damages on Late-Paid Contributions Before Filing of Complaint (7/19, 9/19-11/19): | | | | **$1,396.22** |
| 10% Interest on Late-Paid Contributions Before Filing of Complaint (7/19, 9/19-11/19): | | | | **$0.00** |
| **Subtotal (LDS and Interest on Late-Paid *Prior to* Filing of Complaint):** | | | | **$1,396.22** |
| Attorneys' Fees (2/4/19 through 2/29/24): | | | | $39,800.70 |
| Costs (2/4/19 through 2/29/24): | | | | $4,478.63 |
| **Subtotal (Attorneys' Fees and Cost):** | | | | **$44,279.33** |
| **TOTAL:** | | | | **$94,072.93** |

(Dkt. No. 74 at 8.)

### 1.  Unpaid Contributions and Interest

Plaintiffs seek unpaid contributions and 10% interest for July 2020 and April 2024.  (Dkt. No. 74 at 8.)  The evidence supports Plaintiffs are owed $332.09 and $4,988.93 in unpaid contributions for July 2020 and April 2024 respectively, as well as $15.05 in interest for April 2024.  (*Id.*)  Plaintiffs also seek, and the evidence supports, a total of $327.56 in 10% interest on late-paid contributions for the months of January 2020, February 2020, April 2020 to June 2020, August 2020 to December 2020, January 2021 to June 2021, August 2021, September 2021, February 2022 to August 2022, November 2022, December 2022, January 2023, February 2023, April 2023, July 2023 to September 2023, November 2023, February 2024, and March 2024.  (*Id.*

1    at 8, 12.)

2        **2.   Liquidated Damages**

3            Plaintiffs also seek liquidated damages.  (Dkt. No. 74 at 8.)

4            **a.    Statutory Liquidated Damages**

5            Under 29 U.S.C. § 1132(g)(2), a plan which obtains judgment in its favor on a 29 U.S.C. §

6    1145 claim is entitled to an award of (A) "the unpaid contributions," (B) "interest on the unpaid

7    contributions," (C) "an amount equal to the greater of" the "interest on the unpaid contributions"

8    or liquidated damages as specified in the plan (not exceeding 20 percent of the unpaid

9    contributions), (D) "reasonable attorneys' fees and costs," and (E) "other appropriate legal or

10   equitable relief."  *See* 29 U.S.C. § 1132(g)(2).

11           The § 1132 liquidated damages are mandatory when "(1) the fiduciary obtains a judgment

12   in favor of the plan, (2) *unpaid* contributions exist at the time of a suit, and (3) the plan provides

13   for liquidated damages."  *Idaho Plumbers and Pipefitters Health and Welfare Fund v. United*

14   *Mechanical Contractors, Inc.*, 875 F.3d 212, 215 (9th Cir. 1989).  However, "[w]hen a trust fund

15   seeks to collect liquidated damages for delinquent contributions which have been paid by the time

16   the suit is filed, mandatory liquidated damages under § 1132(g)(2) do not apply."  *Board of*

17   *Trustees v. Udovch*, 771 F.Supp. 1044, 1047 (N.D. Cal. 1991).

18           Here, Plaintiffs filed their suit on December 20, 2019.  (Dkt. No. 1.)  Prior to the filing,

19   Defendant paid late contributions for July 2019, September 2019, October 2019, and November

20   2019.  (Dkt. No. 74-1 ¶ 16.)  Because the payments, though late, were fulfilled before the

21   Complaint was filed, Plaintiffs are not entitled to statutory liquidated damages accrued from these

22   delinquencies.

23           **b.    Contractual Liquidated Damages**

24           However, the Court may also enter judgment for liquidated damages as a matter of contract

25   even when statutory liquidated damages are not mandated by § 1132(g).  *Idaho Plumber*, 875 F.3d

26   at 216 ("The legislative history indicates that § 1132(g)(2) does not preempt alternative

27   contractual remedies.").  "Under federal common law, a liquidated damages provision is

28   enforceable so long as 1) 'the harm caused by a breach [is] very difficult or impossible to

United States District Court
Northern District of California

10

1   estimate,' and 2) 'the amount fixed [is] a reasonable forecast of just compensation for the harm

2   caused.'" *Board of Trustees of Bay Area Roofers Health & Welfare Tr. Fund v. Westech Roofing*,

3   42 F. Supp. 3d 1220, 1228 (N.D. Cal. 2014) (quoting *Idaho Plumbers*, 875 F.2d at 217).

4           Here, the Master Agreement stipulates Defendant owes ten percent (20% once a lawsuit is

5   filed) liquidated damages and 10% interest per annum on unpaid or delinquent contributions.

6   (Dkt. No. 74-2 at 268-69, §§ 12.13.01-12.13.02.) [3]  Fixing "the actual expense and damage to the

7   [Trust] Funds for each Individual Employer's default" would be impractical.  (Dkt. No. 74-2 at

8   270 § 12.13.00.)  Delinquencies would delay or prevent Plaintiff Trust Funds from "processing

9   claims by employees for benefits under the plan" and impede Plaintiff Trust Funds' ability to pay

10  benefits, making it extremely difficult to determine the actual damage amount.  (*Id.*)  Ten percent

11  liquidated damages of late-paid contributions is a reasonable forecast of just compensation for

12  potential harm.  *See United Order of Am. Bricklayers & Stone Masons Union No. 21 v. Thorleif*

13  *Larsen & Son, Inc.*, 519 F.2d 331 (9th Cir. 1975) (enforcing the 10% liquidated damages

14  provision of the collective bargaining agreement).

15          But, 20% liquidated damages for contributions paid late after the Complaint was filed is

16  not a reasonable forecast of just compensation for potential harm.  While the Collective

17  Bargaining Agreements provide liquidated damages shall increase from 10% to 20% if a lawsuit

18  to collect delinquent contributions has been filed, Plaintiffs do not explain why this increase is

19  reflective of a reasonable forecast of potential harm.  (Dkt. No. 74-2 at 268 § 12.13.01); *see Idaho*

20  *Plumbers*, 875 F.2d at 218 (finding the amended provision for liquidated damages of 20% was not

21  a good faith attempt to estimate potential damages from a breach because the trust funds provided

22  no explanation for the increase from 10% to 20% liquidated damages).  Furthermore, a lawsuit to

23

24  ───────────────

[3] Plaintiffs may recover liquidated damages for unpaid contributions accrued after the Complaint
was filed because requiring trust funds "to file multiple lawsuits to recover post-complaint
liquidated damages . . . would needlessly burden the parties and the courts . . . [and] . . . would
undermine policy goals of deterring ERISA violations and of recompensing prevailing plans."
*Roofers Local Union No. 81 v. Wedge Roofing, Inc.*, 811 F.Supp. 1398, 1401–02 (N.D. Cal. 1992);
*see also Trustees of Bricklayers Loc. No. 3 Pension Tr. v. Huddleston*, No. 10-1708, 2013 WL
2181532, at *4 (N.D. Cal. May 20, 2013) ("[T]he Court notes that while some of the liquidated
damages were incurred after the filing of this lawsuit, the Court may nonetheless award Plaintiffs
those damages.").

United States District Court
Northern District of California

1  collect delinquent payments does not justify the increase in liquidated damages because Plaintiffs

2  are already entitled to "reasonable attorneys' fees and costs of the action" under ERISA.  29

3  U.S.C. § 1132(g)(2)(D); *see Board of Trustees*, 771 F. Supp. at 1051 (finding an increase from

4  10% to 20% for liquidated damages is not justified by the costs incurred from counsel's collection

5  efforts because a separate avenue for collecting attorneys' fees is provided, nor are those costs so

6  difficult to measure that they are appropriate subjects of liquidated damages provisions).

7      Therefore, the Court awards 10% liquidated damages for delinquent payments and declines

8  to apply the provision increasing liquidated damages to 20% when a lawsuit is filed.  (Dkt. No.

9  74-2 at 268 § 12.13.01.)

10             **c.     Recalculated Liquidated Damages**

11      Plaintiffs seek $2,365.92 and $997.79 in 20% liquidated damages for July 2020 and April

12  2024, respectively, as well as $39,370.04 in 20% liquidated damages for late-paid contributions

13  after the Complaint was filed.  (Dkt. No. 74 at 1.)  As the provision increasing liquidated damages

14  from 10% to 20% is not a reasonable forecast of potential harm, liquidated damages for July 2020

15  and April 2024 should be $1,182.96 and $498.90 (20% liquidated damages for these months

16  ($2,365.92 and $997.79) divided in half).  (*Id.*)  Similarly, liquidated damages for late-paid

17  contributions after the Complaint was filed should remain at 10%, amounting to $19,685.02 (20%

18  liquidated damages after the Complaint was filed ($39,370.04) divided in half).  (*Id.*)

19      Therefore, total liquidated damages are $21,366.88 ($1,182.96 + $498.90 + $19,685.02).

20  Because this adjustment was made by reducing liquidated damages in half, the total decrease in

21  damages is also $21,366.88.

22      **3.   Recalculated Damages**

23      Plaintiffs are entitled to contractual liquidated damages at 10% as a matter of contract.

24  (Dkt. No. 74-2 at 268 § 12.13.01.)  Because Defendant failed to pay the July 2020 and April 2024

25  contributions in full, Plaintiffs seek outstanding contributions, 20% liquidated damages, and 10%

26  interest on the owed balances for those months for a total of $8,699.78.  (Dkt. No. 74 at 8.)

27  Plaintiffs seek 10% in liquidated damages and 10% in interest on delinquent or unpaid

28  contributions owed before the Complaint was filed, amounting to $1,396.22.  (*Id.*)  Plaintiffs also

seek 20% liquidated damages and 10% interest on late-paid contributions owed after the Complaint was filed, amounting to $39,697.60.  (*Id.*)  Combined, Plaintiffs seek total damages of $49,793.60 ($8.699.78 + $1,396.22 + $39,697.60).  However, the provision increasing liquidated damages from 10% to 20% is not a reasonable forecast of potential harm, and so liquidated damages for July 2020, April 2020, and late-paid contributions in the months after the Complaint was filed will remain at 10%, decreasing total damages by $21,366.88.  (*Id.*)  So, following the provisions within the Master Agreement and statutory requirements, the revised damages total $28,426.72 ($49,793.60 - $21,366.88.).

Therefore, the Court awards Plaintiffs $28,426.72 in damages.

**E. Attorneys' Fees and Costs**

Plaintiffs seek to recover $39,800.70 in attorneys' fees and $4,478.63 in costs incurred in this action against Defendant amounting to $44,279.33.  (Dkt. No. 74 at 8.)  Plaintiffs request additional attorneys' fees and costs incurred in this action against Defendant and ask to submit additional declarations to the Court regarding such amounts claimed due.  (*Id.* at 8, 26.)

**1. Attorneys' Fees**

A court shall award "reasonable attorney's fees and costs of the action, to be paid by the defendant," and the Master Agreement provides Defendant owes Plaintiffs any attorneys' fees Plaintiffs incur due to Defendant's default.  29 U.S.C. § 1132(g)(2); (Dkt. No. 74-2 at 270, § 12.13.08.)

The "lodestar method" is the appropriate method for evaluating Plaintiffs' request for attorneys' fees, which is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  In determining whether a prevailing party's requested fees are reasonable, the Court considers the "experience, skill, and reputation of the attorneys requesting fees," as well as the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995).

In a declaration summarizing the qualifications and hourly rates of the attorneys and paralegals in this lawsuit, Plaintiffs seek $39,800.70 in attorneys' fees.  (Dkt. No. 74-3 ¶¶ 22-30.)  Attorneys and paralegals, all under the firm Saltzman and Johnson, who worked on this matter are Tino X. Do, Michele R. Stafford, Matthew P. Minser, Eric K. Iwasaki, Ana P. Hallmon, and Alicia Wood.  (*Id.* ¶ 22.)  Records of billing hours and rates were documented using billing software and such records were submitted to the Court.  (*Id.* ¶ 23; Dkt. No. 74-4 at 11-73.)

Mr. Do incurred $12,192.50 in attorneys' fees, having spent 40.1 hours on this matter with rates of $230 per hour from February 2019 to April 2020, $250 per hour from May 2020 to December 2021, $285 per hour in 2022, $305 per hour in 2023, and $325 an hour in 2024.  (Dkt. No. 74-3 ¶¶ 22, 24.)

Ms. Stafford incurred $3,031.50, billing 12.6 hours with a rate of $250 per hour.  (*Id.* ¶¶ 22, 27.)

Mr. Minser incurred $1,835.00, billing 7.5 hours with rates of $230 per hour from February 2019 to April 2020, $250 per hour from May 2020 to December 2021, $285 per hour in 2022, $305 in 2023, and $325 in 2024.  (*Id.* ¶¶ 22, 25.)

Mr. Iwasaki incurred $1,719.50, working 7.3 hours at rates of $230 per hour from February 2019 to April 2020 and $245 per hour from May 2020 to December 2021.  (*Id.* ¶¶ 22, 26.)

Ms. Hallman incurred $2,615.50, billing 9.9 hours with rates of $230 per hour from February 2019 to April 2020, $250 per hour from May 2020 to December 2021, $285 per hour in 2022, $305 per hour in 2023, and $325 in 2024.  (*Id.* ¶¶ 22, 28.)

Paralegal Ms. Wood incurred $18,406.70, billing $135 per hour from February 2019 to April 2020, $145 per hour from May 2020 to December 2021, $165 per hour in 2022, $175 per hour in 2023, and $185 per hour in 2024.  (*Id.* ¶¶ 22, 28.)

These rates are reasonable hourly rates in the Northern District of California.  *In re Linkedin User Privacy Litigation*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800" and "for associates from $285 to $510" as of 2015) (cleaned up).  Counsel's hours billed are also reasonable, and the work performed for each entry is meticulously described in the billing software records.  (Dkt. No. 74-4

at 11-73.)  Therefore, Plaintiffs have demonstrated the request for attorneys' fees in the amount of $39,800.70 is reasonable.

### 2. Costs

Federal Rules of Civil Procedure 54(d)(1) provides a prevailing party is entitled to costs. Plaintiffs seek $4,478.63 in costs comprised of filing fees, service of process fees, and investigation fees to effect proper service on Defendant (including "surveillance to effect service on Defendant" and "investigation on Defendant to determine correct address to attempt service.") (Dkt. No. 74-3 ¶ 31.)  While these costs are on the higher end, given the difficulty of serving Defendant in this matter, Court finds them reasonable and awards $4,478.63 in costs to Plaintiffs.

### CONCLUSION

Plaintiffs' service of process on Defendant was sufficient, and the Court has both subject matter and personal jurisdiction.  The *Eitel* factors weigh in favor of entering default judgment for Plaintiffs.  Therefore, the Court GRANTS the motion for default judgment and AWARDS Plaintiffs $28,426.72 in damages, $39,800.70 in attorneys' fees, and $4,478.63 in costs for a total of $72,706.05.

**IT IS SO ORDERED.**

Dated: July 26, 2024

JACQUELINE SCOTT CORLEY
United States District Judge